Dan Hill, I represent Shamariae Jones in this appeal. And if I may, could I just reserve about three minutes for rebuttal? You may. Thank you, Your Honor. With the court's permission in this, they want to direct me elsewhere. I was going to start with the Sixth Amendment concerns and then address the Rule 29 evidentiary concerns. And just to kind of hone in a little bit of the government's responses to our arguments. I think there's a couple of times in a responding brief where he mentions a 90-day and a seven-month. What we're talking about here over Mr. Jones' objection is a seven-month continuance past the four years that had elapsed leading up to that point. And of course, the court is well aware that of those four years, there were orders in place not allowing jury trials to go forward. The fix for that was indeed stipulations by the parties to continue trial out past that period. So when we're talking about the 13 stipulations leading up to the seven-month continuance over Mr. Jones' objection, a lot of those were pursuant to the court's order disallowing trials. So when the government talks about... I thought there are at least 44 out of the 51 months where a defendant's counsel wanted more time to review discovery and prepare for trial. It was really only the seven-month continuance to which your client objected that was during the COVID period where the court didn't think they could pull a jury together during the pandemic. So during the pandemic, there were boilerplate stipulations. That's how it was handled in the District of Nevada. That's how district courts handled it. We have to exclude speedy trial time or the cases don't get stipulated out. In the seven months we're talking about, the order was not in place that trials were permitted to go forward. Trials were occurring with quite frankly minimal restrictions in the courtroom, safeguards in the courtroom. At that point, even some of the plexiglass and all that had kind of started to fade away. And so those seven months were over Mr. Jones' objection while trials had resumed. Previous to that, there was a lengthy period where the special order was in place disallowing jury trials where, yes, we were submitting stipulations because that was just kind of the understanding of how we were not having jury trials. We had to submit paperwork to we would run into logistical issues. So we're talking about seven months past about a year and a half period where there were no trials. Certainly, it wasn't necessarily captured on the record, but having represented Mr. Jones, just to contextualize it, the parties were ready to go long before the restrictions were lifted. This October date when trial was set was the first date that occurred in this case after the special order. Can I ask you, you were trial counsel for Mr. Jones at the trial. I understood from the record that he was wearing a mask during the trial. Is that right? That's right. Was it a clear mask or opaque mask? And I know he took it off at one point for the jury to see his face. Is that correct? It was an opaque mask. It was, okay. By the special order in the district in Nevada, those face shields were ruled to be... Only for witnesses. Right. The record says the witnesses wore the clear mask. Right. Okay. Right. Was the videotape, was it pre-admitted as an exhibit? It's, I, judge, whether I, it is my general practice to stipulate in most of the trial exhibits. So it was pre-admitted, but the video was never shown to the jury during the trial, correct? It sure was shown to the jury during the trial. It was? It sure was. My understanding was that the jury during deliberations had not seen the video and asked for permission to see it during deliberations. If I recall, judge, and again, that's not a part of the record I really honed in on, I believe the jury asked to see it again. Okay. Okay. So why, I mean, this, I guess, gets to the sufficiency question, you know, speaking only for myself, I looked at the video and, you know, I guess they could be the same person, but it doesn't look, you know, it could be basically anybody. So you know, I would have trouble were I a juror saying that it was the same person beyond a reasonable doubt, but that's not really the way we're supposed to look at it, right? So viewing the evidence in the light most favorable to the government, why couldn't some other hypothetical juror have thought, well, this looks like the same person? Well, I think primarily in what really makes this case unusual, and I must commend mightily the AUSA who tried this case in not seizing upon that opportunity to urge the jury to even consider it. Of course, the court is aware, the jury was not aware, and I understand that, but the court was aware that the government's theory was that that was not Mr. Jones, and that's what puts us in such an unusual position. The jury was never told that, of course, but the government never urged. I've done a lot of trials, and I know Judge Christensen will agree that I can't think of any other example where if they have a video that they're showing to a juror, which I think the court saw the video, we can agree there's nothing to it by way of being able to identify. Actually, let's talk about that. I looked at the video as well a number of times and compared it to the booking photo, and there is definitely some similarity in the cheek, the shape of the nose, the way that the mouth is gaping open both times. There are some of the facial features, skin tone that are similar. So why couldn't, with this very highly deferential standard, a jury make that finding beyond a reasonable doubt? Because there wasn't any— And the other circumstantial evidence, right, that he is driving Mr. Arnold away from a bank robbery. Mr. Arnold is in the trunk of his car with his shirt off, and he drives him to Mr. Arnold's home. The same firearm that was involved in both robberies is in the trunk with Mr. Arnold. Why not, based on the totality of the circumstances and all of the evidence, could the jury not make that finding? I think the brevity—and I know that the court looked at the video—I think the brevity of the guy's face on that video, coupled with no—I mean, when you take the trial evidence as a whole, and they brought—they had photo lineups for Mr. Jones, they had Mr. Jones as the other person in the video. And I think what makes ratifying this jury checking the guilty box based on that one unclear frame, which admittedly has arguable similarities, is that no one was urging that theory. No one asked them to consider that to be Mr. Jones. No one argued that that was Mr. Jones. And again, I think Judge Christensen would back me up on this. I can't think of any other trial example where a witness is not—the government does not ask a witness to identify the individuals in a video and just leave one person completely unidentified and expect the jury then to connect the dots without any corroborative identification photo lineup. Once they've identified Mr. Jones, asking the people who were there, none of that happened. And the government had all the opportunity to do that, and the reason they didn't is because the government, based upon both statements, neither of which were played to the jury, everyone in the room other than those 12 jurors knew that Mr. Jones was not in there, based upon both statements and the government's theory. So I think that's what makes it— But whose statement are you referring to? Because Mr. Jones did confess to the robberies. It's just that that confession was not admitted into evidence during the trial. So whose statement—are you referring to Mr. Jones' statement? Yes. Yes. Mr. Jones also—and I don't—that was a record in his view. Wait, you're not challenging—he did confess. It's just that that evidence was not admitted. He confessed to being the getaway driver. Right. And so that's what makes the whole situation, I guess, so frustrating is on the one hand, of course, the jury never heard the government proffer its theory like everyone else in the room did. So as a trial lawyer, I'm in the awkward position of kind of standing where the government was not urging that the other person in the video was Mr. Jones. Again, I commend the government trial counsel because he certainly could have seized upon that opportunity. Well, he did that to probably preserve his ability to prosecute Mr. Arnold, right, who was the bigger— I'm sorry. —or more culpable defendant, correct? Was I supposed to be watching that time, Your Honors, or is that my full 10 minutes?  Well, you can answer the question. Okay. Thank you, Your Honor. Could I ask you just a quick question? I'm just curious. When the jury asked for the opportunity to look at the video, did the judge advise the lawyers of the request and get your input on that? If you remember. Yes. Yeah. Yes. I remember, if I recall, just a very brief phone call with Chambers. Okay. Thank you. Where I probably objected. Yeah. All right. We'll give you two minutes for rebuttal. Mr. Walkingshaw. Good morning. If it may please the Court, Peter Walkingshaw on behalf of the United States. Before I begin, I would like to direct the Court's attention to an error that we did make in our brief on page 8. Before we talk about the speedy trial issues, unfortunately, and I apologize for this error, it's entirely my fault. We stated that Jones' counsel did not object to the continuance, but Arnold's counsel asked for the continuance, and Jones' counsel vehemently objected. So I apologize if that caused any lack of clarity. But on the speedy trial point, all this Court has to look at is the record of the continuances, the stipulations that the parties entered into going up to this trial. Can I just get clarification? Are you talking about the 90-day continuance on October 12th of 2020? Yes, Your Honor. It's, I believe, in our description of that event. So what was... Is that Jones' personally objected? Yes. Jones' counsel objected. That was my mistake. I apologize, Your Honor. Okay. All right. So what was happening in Nevada during the pandemic? Mr. Hill mentioned this. Did the Court require the parties to file stipulations to continue the trial, as opposed to just sua sponte, pursuant to some standing order, continuing cases? So I would direct Your Honor's attention to, it's said in a footnote in our briefs, there was a standing general order compliant with the CARES Act allowing for a contiguous under... Right. Right. But it required individual... It required district judges to make individual determinations on individual cases. There was certainly no requirement that a party submit stipulations to continue trials if the reasons contained in that stipulation weren't accurate. Okay. There were certainly, and I don't want to go too far outside the regular, there were certainly instances in which trials were continued over defendant's objections. In this case, it eventually became one of those. But there was a requirement consistent with pre-pandemic and post-pandemic practice. Was there a backlog of cases once the judges in Nevada started trying them again? Criminal cases? Do you know? I mean, there certainly were a number of cases waiting to be tried because they were delayed due to pandemic issues. Right. That's right, Your Honor. Yeah. And I will note very briefly the temporary general orders indicating whether or not the courthouses were available for trials are still available. They're cited in our briefs and in a footnote. I believe that during the seventh month period that Mr. Jones' counsel referred to earlier, trials did resume, but they were again suspended during that seven-month period. So I think that the most accurate description of when the courtrooms were available for trials would be in the temporary general orders that are cited in our briefs. Can we go to the sufficiency of the evidence issue? Please. The government clearly never thought the video was strong enough because, and you can correct me if I'm wrong, my understanding was that you didn't show it. It was admitted as an exhibit, but you didn't show it to the jury and the jury requested to see it for the first time during deliberations. So you clearly didn't think it was strong enough evidence to show it to the jury, and you never, as Mr. Hill says, you never said, and the person who went into the Citibank with Mr. Arnold was Mr. Jones. So, but it seems on appeal you're saying, oh, the video is so crystal clear, it just seems like there's an inconsistency and a tension there. You want to address that? And what's your best evidence that there's still sufficient evidence to support the jury's verdict? Oh, Your Honor, I certainly don't want to overstate the evidentiary value of the video, the court's view that we viewed it. His face is on there. It's brief. It's in three-quarter profile, and his hat covers, I would say, sort of from here up. What I would say regarding the government's position below, we've certainly reconsidered whether or not the individual in that video is Mr. Jones. The government's position below, as explained both in our briefs and in the government's opposition to the motion for acquittal, this is not in the excerpt of record, but it's at ECF 234, page 6, footnote 2. The government's belief that there might have been a third person involved in this robbery or that Jones might have only been the getaway driver, as Jones' counsel was referring to earlier, that was based solely on an uncritical acceptance of Jones' admission to law enforcement officers as to what his involvement in the robberies were. He basically said, I drove, but I didn't go in. Now, I want to address the Court's— Well, but it's more than that, because, I mean, I've read that response to the motion for judgment of acquittal, and in your description, in that motion, you described the video as depicting Arnold and, I believe it was the phrase you used, was an unidentified accomplice, right? So you clearly didn't think that the video showed Jones at that point. Your Honor, I think, in part, this is an important reason why our system interposes the jury between the government and the ultimate decision in criminal cases, because often the jury will see things that the government does not see in the evidence, and their job is not to necessarily assess a government's theory or, you know, listen to a—it's to look at the evidence and determine whether or not the elements of the crime have been proven. And in this case, you know, often that interposition will inure to the defendant's benefit. They'll see weaknesses in the government's case that the government might not. But the jury is a third-party neutral arbiter of what the evidence shows, and it's clear that they took a careful consideration of this video in conjunction with the evidence associated with the Chase Bank robbery that Jones was driving Mr. Arnold around shirtless, that evidence not only from the Chase Bank robbery but also from the prior Starbucks robbery were found in the trunk of the car and Mr. Jones's admission to law enforcement that wasn't— But you also, as the government, had all of that information, and you still had a doubt. So how could we find that a reasonable jury would find beyond a reasonable doubt that the person in that video is Mr. Jones? You clearly had doubt as to whether the person in the video was Mr. Jones. I'm not sure that the government—I'm not sure I'd characterize the government as having had—respectfully, Your Honor—as having had a doubt so much as I don't think the government took quite as careful a look at this video as the jury did. I believe Your Honor is correct that this exhibit was admitted but not played during the trial, and it was the jury that asked to look at it. As Your Honor is aware, it is brief, and the government was proceeding to trial under the theory that Jones's admission—his full confession, with some redactions to avoid a brutal problem with Mr. Arnold that was disposed in the—or the court will deal with in the companion appeal. The government was proceeding assuming that that confession was going to come in, and so the evidentiary value or the importance of that video I think just wasn't apparent to the government as it proceeded forward to trial. Now when the confession came out, the government put forward the evidence it had to the jury for it to consider, and I think the jury frankly saw something the government failed to realize in its preparation for trial in this matter. How long did the jury deliberate in these cases? I apologize, Your Honor, I don't know that offhand. It seems like you're sort of stuck. You made this strategic decision, and I know you were not trial counsel, but your colleagues made this strategic decision not to introduce the confession of Mr. Jones because of the brutal issue with Mr. Arnold, and you viewed Mr. Arnold as the more culpable defendant, so you were willing to sacrifice some evidence against Mr. Jones in order to get a conviction of Mr. Arnold, and now you're kind of stuck. Respectfully, Your Honor, I believe that, as you noted, it is for this court to assume that the jury drew every inference in the government's favor of this evidence. The courts reviewed the video, and as the court noted, as respectfully, Your Honor, you noted, there's a similarity in the face for the individual in that video and Mr. Jones, and Mr. Jones two weeks later was found driving Mr. Arnold around in the trunk of his car without a shirt on with a gun from these bank robberies. I think that's more than sufficient evidence for a jury to conclude, beyond a reasonable doubt, that the person involved in these robberies is Mr. Jones. I believe I have a minute of time left. I'd be happy to answer any remaining questions of the court, but if there aren't any, I'm going to move on. It looks like there aren't any. Well, I did have a question. So, do you concede that if we do not find there was sufficient evidence on the Citibank robbery, does that then mean we would have to vacate the conviction for the brandishing of firearm for the Chase Bank robbery? Because your evidence on the Chase Bank robbery firearm conviction seems to completely rest on the fact that Mr. Jones committed the Citibank robbery. That would track the ruling of Judge Gordon below that, effectively, you need a prior robbery to give notice to Mr. Jones that a firearm would be used in a subsequent robbery. I don't have any evidence to point the court to that would contradict that ruling should the Citibank robbery be used. So, you concede they rise and fall together, those two? I believe they do rise and fall together. Okay. Let's say we were to find that there wasn't sufficient evidence on those two, then should there be a resentencing on all of the counts of conviction or? I do believe that plenary resentencing is what would be appropriate in this case, Your Honor. But again, I think, I see him at time, I would just, unless the court has other questions, I would just conclude with it. No, I don't. Thank you. I guess I just have one question following up on that. I mean, so we are obviously bound by Carr and what it says about how we assess foreseeability in the 924C context. Does the government have a view on Carr? I mean, not that we could do anything about it because we're bound by that decision, but I'm just wondering if you have any thoughts on the decision. Well, I mean, I think in some respects, Your Honor, Carr is a straightforward application of Pinkerton and that foreseeability is the appropriate standard. I fear there might be something in Your Honor's question that I'm failing to appreciate. Well, it seemed like one might think that Carr is a, reflects a unrealistically parsimonious view of what might be foreseeable to a defendant. I certainly personally would agree with that, but Your Honor, we're not asking this court to overturn that case. In this case, I'm very sympathetic to the point of view, but I don't know if there's anything that you or I can do about it in this particular case. Thank you. And if there's no further questions, I will submit. Thank you for your time. Thank you. All right. So, Mr. Hill. And thank you again, Your Honors, if I could just clarify a couple of things. I appreciate Judge Koh. All right. So, the video wasn't shown to the jury. It was a great argument you made for me, Judge Koh. I appreciate that. Well, let me ask you a question. It's a highly deferential standard. Okay? And this is a question of fact, right? This is a question of fact. And the jury had access to a lot of things that we don't have access to, right? We're looking at cold paper. They got to see Mr. Jones' height. They got to see his gait, presumably. They got to see his build. They got to see his reaction during the trial when various evidence was being portrayed. We don't get to see any of that. That's why we're highly deferential on credibility, on anything involving that kind of evidence. Because we're looking at paper. So tell me, how do we reverse this conviction based on that highly deferential standard, based on the fact that we don't have access to all of the information that the jury did? Well, I think it's for the same reason that Judge Gordon, in clearing out the other Starbucks robbery, did the same thing. I mean, he was in the room and saw everything. The jury came back, you know, under the Rule 29 standard, guilty on the Starbucks robbery, which for technical evidentiary issues, cleared it out. And I think not only can the court sometimes, in radical circumstances, overturn a jury's for lack of sufficiency evidence, but it must. And that's the whole reason why we're here. I think the court, and Judge Koh especially, made a tremendous observation in terms of the government's opinion. I understand that the government says sometimes the jury sees things that the government doesn't. I can assure you, with this case agent and this prosecutor below, that was not the case. And the last thing that I wanted to just clarify was, there was not a belief of a third person involved in terms of, again, showing a weakness in that video and identifying it. The case agent testified unwaveringly, based upon his investigation, there was a third person involved in these robbery series. It wasn't, he testified very clearly on that, a very important issue to also impugn the other person in the video. There was a third person that wasn't in that trial. Thank you so much, Your Honors. I appreciate your time. One quick question. How long did the jury deliberate in this case? I was afraid you were going to ask that, Judge. Too long. A long time. It was too long. And where in that process did the question come that they wanted to see the video? Judge, these are tremendous questions that should have been briefed. Well, no. These are the sort of questions that a trial judge asks. I'm just curious. You're right. I want to, I don't think it was an atypical deliberative process. Probably two days. Wow. And if I'm not mistaken, it was the first day. Okay. But thank goodness we record all these things. Okay. Thank you. Thank you, Judge. Thank you, counsel. Thank you, Your Honor. Thank both counsel for their arguments this morning. The case is submitted and we are adjourned.
judges: MILLER, KOH, CHRISTENSON